May it please the Court. My name is Adrienne Parsons and I represent the plaintiff appellant in this matter. The issue before the Court is the issue of sovereign immunity, an age-old issue. The Government is claiming immunity from certain actions that it took during the course of suppressing a wildfire on Mount Lemmon in Tucson, Arizona in 2002, which effectively destroyed the neighboring ranch land which is owned by my clients. The issues that I would like to focus on initially are the issue of the fact that the Government has introduced no evidence whatsoever for this court or the court below to assess whether they have satisfied their burden under the Berkovits tests, the two issues that they need to prove under Berkovits. There is no evidence whatsoever that the Government has introduced. The — in order for any court to assess whether the immunity sections under the Federal Tort Claims Act applies. The second issue that I would also like to deal with in anticipation of the — Kennedy, pardon me, Ms. Parsons. They did introduce at least the regulations which showed that there was no particular way that the Government or the Forest Service was to conduct firefighting operations. Correct. It was up to their discretion how to do so, which is normal. Correct, Your Honor. They introduced — So they didn't have to introduce evidence on that. They had the regulations. Correct, Your Honor. They introduced two affidavits, one by a Forest Service individual that was not involved in 2002 in the fighting of this fire. Secondly, the affidavit of a Forest Service official who was involved. But the essence of both those affidavits was the overarching concern that, yes, the Government has discretion in deciding whether to light a backfire. The decision whether to light a backfire is not being challenged here. There are numerous other actions that were taken or not taken that the plaintiffs are alleging here. The Government has not even attempted to deal with those individual actions. Well, I'm not sure how they would deal with them as a matter of evidence. I mean, I don't understand the law, or perhaps you can straighten me out, but is the law required that they demonstrate that each decision actually be based on a political, economic, social, blah, blah, blah, blah, the list of policy factors that make it discretionary? I think you focus on the nature of the decision, not the decision itself. And so we've identified decisions, or you've identified decisions you allege that they've made, but have you identified regulations or anything else that specifically tells the Government, in case of X, you must do Y? And if you don't have that, isn't it sort of inherently discretionary? Your Honor, your initial statement, I would say, is correct, that there are, in looking at the two steps under Berkovitz, the first one is a lot easier. Can we or can we not point to specific mandated provisions in the Forest Service Manual? We believe that we can. It's the second element that the Government has failed to address, and we feel that the district court brushed aside and did not deal with in any detail. In every single case, be it from the Supreme Court to the Ninth Circuit to the lower cases, the lower court cases, there is a detailed analysis of how the Government made the decisions that were challenged. In cases from some of the various district courts that the Government has cited, it was down to the last minute. They introduced via affidavits, in one of them there was a six-day bench trial, which was evidenced through testimony, down to the last minute why the Government did what they did. That was the way that they attempted to show that their actions were shielded by the discretionary function exemption to the Federal Talks Claims Act. We have nothing comparable to go on here. We do not know why the Government's maps were not up to date, why the Government maps preceding the fire did not show that my client's properties were private property, that they even existed, which we believe, to a large degree, contributed to the failures that we've alleged that caused the damage, the fact that they didn't know that we were there. They ended up lighting a backfire on or in very close proximity to private property that they didn't know was there. They failed to communicate during the course of the fire. What difference does it make who owns the property if the location of the backfire is necessary to stop the fire from spreading? If the property belongs to the Forest Service, they're burning their own property. If the property belongs to private parties, they're burning private property. But the need to set the backfire at the location at which it will be effective is regardless of who owns the property, isn't it? Your Honor, I believe that there are two answers to the question. The first is that that's certainly not an argument that the defendant has raised. The defendant has not introduced anything, any statement under affidavit to argue that had they known where the private property was located, they would have placed the backfire there in any event. We don't know. We would be guessing. But we can affirm on summary judgment on any ground that we find valid, right? Correct. And my second answer to that, Your Honor, is that that goes to the issue of negligence. And that is an issue for the trial court to decide, not an issue. The distinction between whether there was negligence and how the government was negligent is a distinction that, in fact, has been drawn in Westland by, Your Honor, Judge Fletcher. This distinction of whether there was negligence and causation and if the fire had been placed elsewhere is an issue of negligence that's reserved for the trial court. Explain to me why this is different from Miller v. U.S. There the fire was fought or not fought depending on considerations of public policy, how dangerous it was to the firefighters versus how dangerous it was to the land, right? Correct. That was a discretionary finding. We found that to be so. That's the law of the circuit. Why is this different? Your Honor, the factual situation is completely different between Miller and between the current case. Miller was the situation where the U.S. Forestry Service was faced with multiple wildfires. It had limited resources. It was required during the emergency to commit resources to the fighting of one fire and not another. Damage was going to be caused anyway. They decided to commit the resources to fighting one of the fires, and another fire burnt that particular plaintiff's land. It was a decision that they justified in detail and that the court was able to assess where along the spectrum of discretionary conduct the government conduct fell. In the current case, we have no justification from the government as to why they made the decisions they did or the lack thereof. A large part of our argument is based on the fact that they merely failed to have up-to-date maps so that at the time that the emergency arose, they would have correct information. They would know who to contact, when they'd made the decisions they were going to make. In the current case, it was merely a failure to a large degree. There was no evidence that's been presented, certainly, that they applied their mind and decided to focus resources during the emergency. So correct maps would have told them who to contact. Is that your point? Correct. It may also have had an influence on where they placed the backfire. Perhaps I'm dense this morning, but what difference would it have made if they'd known who to contact if they strategically wanted to set backfires on that land? Your Honor, if I may answer briefly so that I can retain a minute for rebuttal. Firstly, it would have allowed the plaintiffs to have minimized any of their loss if they'd known that this fire was coming, the backfire. And secondly, there is regulations that require them to get permission from private landowners before they light backfires. If I may reserve the last one and a half minutes for rebuttal, unless you have further questions. I have a question I want to ask you. The regulation requiring that maps be prepared was adopted very close to the time of this fire. Is that right? That is correct, Your Honor. But it was a national regulation that had applied throughout the country. This recent adoption was merely a formalizing of a regulation that they had already been implementing. Thank you. May it please the Court. I'm Charles Davis representing the United States in this matter. I'd like to first address something Ms. Parsons said in her argument, which is that there was no evidence of any policy analysis that drove the Forest Service's decision to conduct the burnout operations at issue in this case. The Ninth Circuit discretionary function analysis, discretionary function exception analysis, requires that the conduct is subject to policy analysis. It does not create a burden on behalf of the government to come forward with evidence of its actual policy analysis. However, in this case, the government did submit the affidavit of a fire administrator who was present during the Bullock fire and who worked on the Bullock fire. The United States submitted the incident action plans that describe the actions and the objectives leading up to the burnout operations. So the policy analysis is clear from the record. It appears that the Ninth Circuit discretionary function exception analysis creates a distinction between two categories of cases. The first category of cases involves claims of alleged violation of broad safety mandates that do not prescribe a specific course of conduct to which the discretionary function exception applies. The second category of cases are claims of alleged violations of established safety standards to which the discretionary function exception does not apply. The claims alleged in this case fall within the first category to which the exception applies. The cases relied upon by plaintiffs are not subject to policy analysis. They're not saying or not challenging the Forest Service decision to light the backfire. They're challenging the Forest Service's actions, quote, surrounding that decision. That is, to be aware of the location of their properties, a failure to inform the firefighter about their properties,  what policy decisions or policy considerations go into not finding out who owns the property or not informing firefighters about the properties or failing to protect those properties? The policy decisions relate to what to do with that information, how to act on that information. Those types of policies, the types of policies that are cited in the briefs, notably in Miller v. United States, the Court examined two of the very same provisions of this Forest Service manual relied upon by the plaintiffs in their briefs, Section 5130.2 entitled Objectives and 5130.3 entitled Policy. The policy set forth in Section 5130.3 provides, and I'll quote, conduct fire suppression in a timely, effective, and efficient manner with a high regard to public safety. These are the types of broad policy mandates, statements of policies and objectives that do not remove the Forest Service discretion in how to fight a forest fire. Counsel, just for the moment, let's assume that the government was completely within its policy to decide that they had to light a backfire and that they had to light it in this particular place. Now, if they knew of the existence of the private properties that would be in the zone of risk, what would this require them to do under this broad policy? There's a statement you have to consider public safety. That is one of the factors that the Forest Service may take into consideration. Well, sir. It may take into consideration in the decision for the fire, but we're past the decision for the fire. And the question being posed now is, what's the basis for the decision not to tell somebody that we're lighting your property on fire? The – there is – my point is that there is no mandatory regulation that the – Well, counsel, what do we mean by public safety? I'm assuming, okay, you should light the backfire. You should light it where you lighted it. Then what? If you know where the property that's at risk is and that there are owners of it, do you have an obligation to go and tell them? There is no specific mandatory statute, rule, or regulation that says that the Forest Service has to act in a certain way to convey this information. There are goals stated in the SF – the Forest Service manual about clearly keeping the public apprised, clear warning. Let's assume in this case for the moment that they knew about these private property owners. There is one of the persons called in and said that they had heard the rumor that there was going to be a backfire. Tell us what you know about it. Is that right? That's one of the allegations in the case. Yes. Yes. Your Honor, I think – Are you saying that the government can decide we don't want to go and tell them that their place may be in danger? What I'm saying, Your Honor, is that the Forest Service has to have discretion in how to deal with a multi-aspect event. And one of the responsibilities of the Forest Service is to convey information to the public. But there are no mandatory rules and regulations about that. Also – What is the public policy consideration behind not telling private property owners that you're going to start a fire close to their property? Do you want – have you really considered if we tell them that, they might come out and get injured themselves in trying to fight the fire, or they might get in the way of us fighting the fire? Is there any evidence of that? Your Honor, those two examples could be policy decisions. Those examples jumped into my mind. The question is, was there any evidence of that before the Court to eliminate a triable issue of fact? The evidence before the Court in the form of the declarations of the firefighters set forth various considerations. What consideration of policy was there considered, if it was, not to tell the public that their property was proximate to the fire? Your Honor, there is nothing in the record regarding that. However, if there was a mistake made in failing to convey this information, negligence is not – is immaterial to the discretionary function. Negligence doesn't mean it's a discretionary function. I mean, if in fact the reason they weren't called was because somebody hadn't updated the map or whoever was making the decision wasn't aware there was private property there, Judge Bea has posed the question, how even theoretically could that be a discretionary policy-type decision? Ordinarily, you wouldn't expect, unless there's, you know, a CIA operation of some kind, if the government knows it's about to turn down somebody's property, ordinarily you'd expect some kind of notification to be given. How has that become a policy decision? Your Honor, in the case of Thune v. United States, one of the claims of the plaintiff was that the United States failed to warn him that it was conducting burnout operations and it would have provided him an opportunity to move his supplies that were destroyed in the fire. This was a district court, but the court rejected that argument under the analysis that's set forth in the district court's opinion in this case. It's hard for me to accept that there isn't an obligation to tell people who you know are in the path of the fire. Your Honor, the case law establishes that the Forest Service has discretion in determining how to go about best to fight the fire. Well, absolutely, but that isn't how they're fighting the fire. It's what kind of notification they give to the people in the path. And throughout these regulations, and I've read them, public service, public safety is a high priority. Thank you, Your Honor. Thank you, Mr. Davis. Ms. Parsons. Very briefly, thank you, Your Honor. I would just like to refer to the fact that the service manual, it does expressly require the Forest Service to obtain permission from a private landowner in order to conduct suppression activities where feasible. And that's on page 20 of my opening brief. Where feasible? Where feasible. So you say that's an issue of fact? Correct, Your Honor. Thank you, unless the Court has any questions for me. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Fletcher B. , Clifton, Bea